JUSTICE McLAREN delivered the opinion of the court: In 2002, K.S. was adjudicated a neglected minor, made a ward of the court, and placed under the legal guardianship of the Department of Children and Family Services (DCFS). Respondent, Kevin S., the minor’s father, appealed, and this court, among other things, reversed the adjudication of wardship and ordered that guardianship and custody of K.S. be placed with respondent. See In re K.S., 343 Ill. App. 3d 177 (2003). Our supreme court denied the State’s petition for leave to appeal but, in an exercise of the court’s supervisory authority, directed this court to vacate our judgment and reconsider it in light of In re Arthur H., 212 Ill. 2d 441 (2004). After such reconsideration, we affirm in part, reverse in part, and remand. On January 16, 2002, the State filed a three-count petition for adjudication of wardship and temporary custody of K.S. Counts I and II, alleging neglect and abuse, respectively, related to K.S.’s mother, Valerie C., and her alleged role in the murder of KS.’s sibling, Baby Boy C., on January 13. Count III alleged that K.S. was an abused minor in that respondent committed a sex offense against T.V, another sibling of K.S., by attempting to place TV’s hand on his penis. The trial court found an immediate and urgent necessity to remove K.S. from the home and place her in a shelter care facility, and it granted temporary guardianship to DCFS. On April 11, the State withdrew counts I, II, and III and filed an additional count IV alleging that K.S. was neglected in that her environment was injurious to her welfare because Valerie failed to protect her by failing to follow the safety plan of DCFS. Valerie stipulated to a factual basis for count IV and that the evidence would prove that K.S. was neglected. The State represented that, if called, DCFS caseworker Evelyn Martinez would testify that she was involved in the investigation of the alleged sexual abuse of T.V On June 12, 2000, Martinez discussed the safety plan with Valerie and told her that respondent could not have contact with any of her children and could not live in their house. On October 25, 2000, she told Valerie that she was going to recommend that the case be indicated, and she reiterated that the safety plan was still in effect. Sometime after that, Martinez learned that respondent had been living in the house with Valerie and her children. The court was also told that the criminal case against respondent, which arose from the allegation that he had sexually molested T.V, had been dismissed in January 2000. The court found K.S. neglected, based upon “the factual basis as presented and agreed upon by Ms. Hayward [Valerie’s attorney] and her client and the State.” The court then ordered a social history investigation and ordered respondent to undergo a sexual offender evaluation. Respondent, through his counsel, stated as follows: “Just so it is clear on the record, my client is not admitting or stipulating to anything. My client’s criminal case was dismissed. In talking with my client!,] I don’t feel as his advocate that that sex offender evaluation is necessary because that charge was dismissed, and he has adamantly denied it from day one. I want the record to show that he doesn’t want the child to be adjudicated neglected, and that the criminal case has already been disposed of. He was already incarcerated for that. The case was dismissed. And we don’t feel that it is appropriate.” The trial court responded that respondent “absolutely can persist in his denial, but the evaluation is going to be ordered. If they tell me you don’t need any treatment, great, wonderful. All the better. But I am going to order that you follow through with that because I have to make sure that [K.S.] is safe.” On June 28, 2002, the case proceeded to a dispositional hearing. The social history investigation, prepared by Catholic Charities, stated that DCFS had become involved with the family when T.V and her cousin reported that respondent “had fondled them and sexually molested them.” However, the case was closed when Valerie “agreed to a safety plan, and reported that she would not allow any contact between her children” and respondent. According to the report, respondent stated that “the girls lied about the incidents” and he “has denied any responsibility for the sexual molestation report that was indicated by DCFS in 2000.” Catholic Charities concluded that such denial “may indicate that [respondent] does not fully understand the children’s needs” and further characterized respondent as “in denial about his responsibility” in the DCFS case. Respondent was “reluctant to comply with services” regarding the sexual molestation charge. The report did note that respondent’s only criminal conviction was of deceptive practices. However, the report concluded that respondent “needs to acknowledge his role in the previous DCFS allegation of sexual molestation, which was indicated. He needs to complete a sexual offenders assessment, and follow all recommendations of the assessment.” At the dispositional hearing, respondent continued to deny any wrongdoing and asked that the court not order him to complete a sex offender assessment or “make him do sex offender counseling.” No witnesses testified at the hearing. After hearing argument, the trial court found K.S. to be a neglected minor, made her a ward of the court, and gave legal guardianship to DCFS. Addressing respondent, the court stated: “Okay. Here is the situation, and just so you understand, Mr. [S.], I have to look at what is in the best interest of the children. The issue is not whether the criminal case was dismissed or not. I have no idea why it was dismissed. I have no doubt that it was. I don’t even know if it was the same complaining witness. But the issue now is that one of the children says that you sexually molested her. That may not be true. All the more reason to follow through with this evaluation and see what they say. They will be reviewing the reports. They will be reviewing the statement to see if there was a recantation, whatever the situation is. I don’t know from what I can see here. But what I can tell you, there is a founded report. There was a statement made by one of the girls. And that you are the father of a young girl, and that I have to make sure that she is protected. So I am going to order the sexual offender evaluation within the next 30 days.” Respondent filed a motion to reconsider, which was denied by the trial court. An appeal to this court followed. Respondent first contends that the trial court erred when it adjudicated K.S. a neglected minor. The State must prove allegations of neglect by a preponderance of the evidence. In re S.S., 313 Ill. App. 3d 121, 126 (2000). A preponderance of the evidence is an amount of evidence that leads a trier of fact to find that the fact at issue is more probable than not. S.S., 313 Ill. App. 3d at 126-27. A trial court’s determination of neglect will not be reversed on appeal unless its findings of fact are against the manifest weight of the evidence; this is so because the trial court is in the better position to observe witnesses, assess credibility, and weigh evidence. S.S., 313 Ill. App. 3d at 127. Our supreme court has held that the only question to be resolved at an adjudicatory hearing is whether a child is neglected, and not whether each parent is neglectful; it is only after the trial court has adjudicated a minor neglected that the court is to consider the actions of the parents. In re Arthur H., 212 Ill. 2d at 466-67. Here, the only remaining count of the neglect petition alleged that K.S.’s environment was injurious to her welfare because Valerie failed to protect her by failing to follow the safety plan of DCFS. Valerie stipulated to this allegation and the State’s factual basis for the allegation. This evidence was unrebutted by respondent. Thus, the allegation of neglect was proved by a preponderance of the evidence. Therefore, the finding of neglect is affirmed. While the supreme court in Arthur H. did not reach the question of the scope of dispositional hearings in neglect or abuse cases due to the facts and circumstances there, the court did make clear that such cases “involve relationships touching on fundamental rights, and the natural ties between parents and their children may not be severed on the basis of mere speculation.” Arthur H., 212 Ill. 2d at 477-78. Because of this, “the State must be held to its burden of proof.” Arthur H., 212 Ill. 2d at 477. Therefore, respondent’s next contention, that the trial court erred in ordering him to complete a sexual offender evaluation and follow the resulting recommendations, requires close scrutiny because the State presented no competent evidence against him and he was never given an opportunity to present evidence on his own behalf. The conditions of a dispositional order must have some basis in the evidence. In re Chyna B., 331 Ill. App. 3d 591, 597-98 (2002). On review, a trial court’s dispositional determination will be reversed only if the court’s findings of fact are against the manifest weight of the evidence or if the court committed an abuse of discretion by selecting an inappropriate dispositional order. In re J.P., 331 Ill. App. 3d 220, 238 (2002). The trial court twice ordered respondent to complete the evaluation — first, when the finding of neglect was made, and, second, as part of the dispositional order. In neither instance was the order supported by law or fact; therefore, we must reverse the trial court’s dispositional order and remand the cause for a new dispositional hearing. The court heard nothing except rank tertiary hearsay regarding the allegations of a sexual offense committed by respondent. At the time that the court found count IV to be proved, it had heard nothing except what Valerie stipulated that DCFS caseworker Martinez would testify to if she were called to testify. In that stipulation, it was stated that Martinez would testify that she was involved in an investigation of the allegation that respondent molested T.V and that DCFS’s safety plan prohibited respondent’s presence in Valerie’s house. It was the violation of this safety plan that formed the basis of the court’s finding of neglect. However, the court also heard that the criminal case against respondent, which arose from the same allegations of sexual molestation, was dismissed in January 2000, more than two years prior to the hearing, and count III of the petition, alleging abuse based on those same allegations, was dismissed just moments before. In both instances, the complete lack of evidence against respondent leads us to conclude that the trial court’s actions were both an abuse of discretion and against the manifest weight of the evidence. The Catholic Charities report generated for the dispositional hearing included the statement that the DCFS report regarding the molestation allegations was “indicated.” However, respondent consistently denied the allegations, and the Catholic Charities report noted this fact. The trial court never heard any direct evidence that respondent had committed any sexual offense. Valerie’s stipulation that she violated the safety plan and the dispositional report stating that allegations of sexual molestation had been made were the only “evidence” that the court heard. The trial court even ordered the sexual offender evaluation based only on the stipulation, as the court ordered the evaluation before the dispositional report was even created. While the DCFS report was indicated, such a designation means only that the report of abuse or neglect was supported by “credible evidence.” Lyon v. Department of Children & Family Services, 209 Ill. 2d 264, 267 (2004); see 325 ILCS 5/3 (West 2004). On the other hand, the court knew that the State had dismissed the criminal charge against respondent and withdrawn the abuse allegations based on the same alleged incident, and that respondent had always denied the allegations. Reference to a DCFS report supported by “credible evidence” was an insufficient basis for ordering respondent to undergo a sexual offender evaluation. “Credible evidence” means that the available facts, viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child has been abused or neglected. Lyon, 209 Ill. 2d at 267; see 89 Ill. Adm. Code § 300.20, as amended by 29 Ill. Reg. 21065 (eff. December 8, 2005). It does not require a fact finder to consider contrary evidence; thus, it places the risk of error entirely on the subject of a report. Lyon, 209 Ill. 2d at 280-81. Our supreme court has acknowledged the “strikingly high” (74.6%) rate of reversal of challenged indicated findings based on credible evidence. See Lyon, 209 Ill. 2d at 281. Labeling evidence as credible in no way denotes that the evidence comports with rules of evidence or procedural due process. See Lyon, 209 Ill. 2d at 280 (regarding due process). A finding by a DCFS worker, as capable as the worker may be, does not obviate the need for the State to produce evidence of alleged offenses and for a judge to find, by a standard more exacting than “credible,” that an offense was committed. The limited value of “credible evidence” was made manifest by our supreme court in Lyon, which dealt with an administrative appeal of an indicated finding of sexual abuse that was entered into the DCFS Central Register. See 325 ILCS 5/1 et seq. (West 2000). The plaintiff, a high school choral director, sought reversal of the indicated finding and expungement of the report from the register. Our supreme court recognized that the plaintiff had protected due process rights implicated by his inclusion on the register — his reputation and ability to pursue present and future employment were both implicated, as evidenced by the fact that he had lost two teaching jobs following entry of the report on the register. See Lyon, 209 Ill. 2d at 273-74. The court then analyzed the competing interests involved — a subject’s significant interest in obtaining a hearing and a final decision in a prompt and efficient manner so that an indicated report, if mistaken, is expunged as quickly as possible, and the State’s significant interest in protecting the welfare of children, with the register being one mechanism used to provide such protection. See Lyon, 209 Ill. 2d at 278. The court concluded that it was appropriate to place more of the risk of error on the adult subject of a report than on children who may suffer additional abuse. Lyon, 209 Ill. 2d at 279. It was in this context of risk of error that the court analyzed the use of the credible evidence standard (used to support the initial indicated finding and the first stage of a subject’s appeal) and the preponderance of the evidence standard (used later at the administrative hearing). The court concluded that use of the “credible evidence” standard in an initial investigation and first-stage appeal does not automatically deprive a subject of due process, because the second-stage appeal is conducted under the more stringent “preponderance of the evidence” standard. While the entire risk of error is initially placed on the subject, it remains so only for a finite period, and the appeal would be finally determined under a more stringent, risk-balancing standard. See Lyon, 209 Ill. 2d at 282. However, it is “constitutionally inappropriate to allow indicated reports based on credible evidence, with their damaging effects on subjects,” to persist beyond the deadlines for completion of the administrative appeals process that are statutorily and administratively set. Lyon, 209 Ill. 2d at 282. Thus, the court ruled that the low, credible-evidence standard, combined with delays in the administrative process of the plaintiffs appeal (which led to a decision being issued approximately 11 months after the report was indicated), violated the plaintiffs due process rights. Lyon, 209 Ill. 2d at 284. In this case, the noxious cloud of “credible evidence” has now hovered over respondent for more than six years and was already more than two years old when the trial court ordered respondent to undergo the sexual offender evaluation. However, even in light of the age and low standard of the “evidence” before it, the trial court abdicated its role as fact finder, as is evidenced by its explanation to respondent of its dispositional order: “The issue is not whether the criminal case was dismissed or not. I have no idea why it was dismissed. I have no doubt that it was. I don’t even know if it was the same complaining witness. But the issue now is that one of the children says that you sexually molested her. That may not be true. Ml the more reason to follow through with this evaluation and see what they say.” (Emphases added.) The State attempted to bolster that explanation with the following argument: “Arguably, in the instant matter, the trial court assumed that the Respondent was a sex offender who posed harm to K.S. because without a related evaluation, it had no other course of action consistent with the best interests of K.S.” (Emphasis added.) We note that if count III had not been withdrawn, an adjudicatory hearing would have been a proper and acceptable course of action to determine if respondent was a sex offender and posed a threat to K.S. Be that as it may, trial courts are to base decisions on evidence, not assumptions. The absence of evidence is not “[a]ll the more reason” to order a parent to submit to a sexual offender evaluation and possible counseling. Respondent was never given a hearing at which witnesses testified, with the opportunity to cross-examine witnesses and present his own evidence. The State foreclosed this possibility when it dismissed the criminal charge and withdrew the abuse allegations against respondent in count III. Instead, the court ordered the evaluation without any evidence closer than old, minimally substantiated, third-hand reports, and it attempted to rely on the sexual offender evaluation to prove whether respondent was guilty of the alleged sexual offenses. In addition to the trial court’s error in ordering the evaluation at all, we must point out the fallacy of the court’s reasoning. We are unaware of any authority that has determined, pursuant to Frye, that such an evaluation may be so utilized. See Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). Completion of the evaluation would not establish whether respondent sexually molested T.V Respondent denied the allegation. In the absence of an admission or stipulation by respondent, only an evidentiary hearing could determine whether respondent committed such an offense. One can readily see the dilemma into which respondent has been placed. The State charged him criminally with a sexual offense, then withdrew the charge when respondent demanded trial. The State filed a neglect petition that alleged the same sexual offense, then withdrew the allegation before a hearing was held. Because Valerie stipulated to a tangentially related allegation, the uncorroborated, unproven allegations of sexual abuse were still in play for the disposition. Catholic Charities, while noting that respondent “has denied any responsibility for the sexual molestation report that was indicated by DCFS in 2000,” also characterized respondent as “in denial about his responsibility” in the DCFS case. Apparently, respondent must take responsibility for actions that he denies ever occurred and that no one will take the responsibility of proving. Denying abuse is not the equivalent of being in denial despite proof of abuse. In re Clarence T.B., 215 Ill. App. 3d 85, 104 (1991). The law cannot allow a trial court to order such an evaluation based only upon uncharged, unsubstantiated, and unproved allegations that have been misconstrued as evidence. Furthermore, respondent demanded a hearing on the merits and an opportunity to confront witnesses but was denied that opportunity. We find error in this violation of the due process rights to confront witnesses and to require proof by at least a preponderance of the evidence, even though the violation was done to “protect children.” If these rights can be sacrificed in such an instance, all other constitutional rights must also be subordinated. The State further argues that a trial court “need not wait until the child is victimized or emotionally damaged” before removing the child from an injurious environment. While true, it does not mean that actions may be taken against a parent without giving him a hearing and an opportunity to respond to any unproven allegations of criminal behavior that would require rehabilitation. As this court noted in In re Baby Boy Butt, 76 Ill. App. 3d 587 (1979): “We are dealing here with the future and only possibilities and probabilities can be assessed. To expose respondent’s children to a reasonable probability of abuse is something this court will not do. On the other hand, no child in any family is free from the possibility of future abuse and we cannot afford to sever the natural ties between parent and child and cause that loss to both of them on the mere possibility that the child may be abused.” (Emphasis in original.) In re Baby Boy Butt, 76 Ill. App. 3d at 594. A case should be decided on the facts in evidence. See In re T.W., 313 Ill. App. 3d 890, 892 (2000). Here, given the total lack of established facts, there was no basis to warrant the order of a sexual offender evaluation. The State had the opportunity to prove these allegations of sexual molestation, either in a criminal trial, in an adjudicatory hearing, or at the dispositional hearing in question. It did none of these things. The court cannot presume these allegations to be proven without conducting a hearing, nor can it order respondent to prove that he is not a sexual offender, especially in light of the insubstantial “evidence” of a sexual offense that was presented to the court. We cannot determine why the dissenting justice claims that a sexual offender evaluation will only involve investigators reviewing reports and reinterviewing witnesses “to try to uncover what happened here.” 365 Ill. App. 3d at 580-81. One with experience in court-ordered evaluations, whether they be for alcohol use in a driving-under-the-influence case or for sexual issues arising out of a sexual abuse case, knows that such an evaluation would be done to assess the subject’s behavior, not the State’s investigative techniques. It was respondent, not the State, who was required to undergo the evaluation; a possible result of the ordered evaluation would be respondent being required to undergo treatment, as the trial court specifically said, not the State having to write another report. The trial court erred in ordering respondent, both before and as part of the dispositional order, to undergo the sexual offender evaluation. The dispositional order is reversed, and the cause is remanded for a new dispositional hearing. Respondent also contends that the trial court erred by not returning K.S. to his custody. Because we have ordered a new dispositional hearing, the issue of KS.’s placement must be addressed again in the trial court. However, in light of our analysis above, we will address some concerns regarding the “proofs” from the prior hearing and the trial court’s original order regarding placement. Pursuant to section 2 — 22 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2 — 22 (West 2002)), once a minor has been adjudicated neglected, the trial court is to determine if it is in the best interests of the minor and the public that the minor be made a ward of the court. The court is then authorized to enter a dispositional order for the custody or placement of the minor. See 705 ILCS 405/ 2 — 23 (West 2002). Section 2 — 27 of the Act then provides in part: “(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian, the court may at this hearing and at any later point: i'fi $ (d) commit the minor to the Department of Children and Family Services for care and service ***.” 705 ILCS 405/2 — 27(l)(d) (West 2002). The requirement that the factual basis be in writing is a requirement, not a request. See In re Madison H., 347 Ill. App. 3d 1024, 1028 (2004). The trial court in this case granted guardianship to DCFS in the absence of any written findings or factual basis concerning respondent’s unfitness, inability, or unwillingness to care for, protect, train, or discipline his daughter. K.S. had been placed under the temporary guardianship of DCFS at the shelter care hearing. At that hearing, the court found probable cause to believe that K.S. was neglected or abused, because of the possible suffocation of her sibling at the hands of her mother and the “[r]isk of harm” due to respondent “being indicated for risk of sexual abuse.” The court found immediate and urgent necessity to remove K.S. from the home and place her in a shelter care facility because her mother was in jail and respondent had a “prior indicated report of risk of sexual harm.” Reasonable efforts to keep K.S. in the home could not be made because her mother was in jail and respondent had “not availed himself to [szc] any sexual offender treatment and has [szc] prior indicated report.” The only allegations against respondent at the time of the shelter care hearing were the DCFS report and his failure to avail himself of sexual offender treatment arising out of an incident that he denied occurred and that the State declined to prosecute. The State had the opportunity to make a showing that placement with a third party was appropriate in this case, through prosecution of either the criminal charge or the abuse allegation or through presentation of evidence at the dispositional hearing. It did none of these. The trial court granted continued guardianship to DCFS in the absence of any evidence other than old tertiary hearsay allegations that had never been proven. The dissent inexplicably relates an improper and inaccurate discussion of and citation to this court’s prior opinion in this case, which was vacated by our supreme court. See 365 Ill. App. 3d at 579. A vacated judgment is nullified, canceled, and void. People v. Eidel, 319 Ill. App. 3d 496, 504 (2001). There is nothing from which this majority can back down, as the entire prior opinion is a nullity. What this court said in K.S., 343 Ill. App. 3d at 187, is now as relevant as what was said in draft opinions that were circulated but never published. Further, in that cited material, this court referred to “the thought process” behind a specific quotation from the dissent, not the thought process behind the supreme court’s decision in Arthur H. that, obviously, did not exist when our previous opinion was filed. Such a misleading use of a quotation is intolerable in an appellate court disposition. The dissent further dissembles in its little discourse on “evaluation” versus “assessment” and the issues of counseling and treatment. See 365 Ill. App. 3d at 580 n.2. The term “assessment” was contained in the Catholic Charities report that was quoted only the sentence before our allegedly incorrect use of the term. Similarly, the references to “counseling” and “treatment” arose from direct quotes from respondent’s attorney and the temporary custody order entered by the court, respectively. “You have eyes, and yet do you not see?” Mark, 8:18. The interest of parents in the care, custody, and control of their children is one of the oldest of the fundamental liberty interests recognized, and this interest is protected by the due process clause. In re Kenneth F., 332 Ill. App. 3d 674, 680 (2002). A fit parent has a superior right to custody of his child that can be superceded only by a showing of good cause to place custody of the child in a third party. S.S., 313 Ill. App. 3d at 132. While the best interests of the child is the paramount consideration whenever a petition for adjudication of wardship is brought (see S.S., 313 Ill. App. 3d at 126), a trial court must render its judgment based on actual evidence and in conformity with statutory requirements. The trial court failed to do that in this case. The best interests of the child is not an isolated concept; it must be determined in the context of the evidence that is properly before the court. The best interests of the child may require the court to order the State to present evidence to prove an allegation, but it cannot require a parent to prove that the allegation is false. Section 2 — 10(2) of the Act prohibits the return of a minor in shelter care to a parent “until the court finds that such placement is no longer necessary for the protection of the minor.” 705 ILCS 405/ 2 — 10(2) (West 2002). We must question how the trial court could ever make such a finding in this case if the State never attempts to prove the hearsay allegations of sexual abuse, since it was those allegations that were the basis for finding at the shelter care hearing that placement could not be made with respondent. The trial court placed on respondent the burden of proving that he was not a sex offender, apparently by undergoing a sex offender evaluation, instead of placing on the State the burden of proving, even by a preponderance of the evidence, that respondent posed a sexual threat to his daughter. “Credible evidence” may have been sufficient for the court to find that placement with respondent was not appropriate at the time of the shelter care hearing. However, such flimsy, unproven evidence cannot indefinitely be used to separate respondent and his child. Court-ordered interference in a parent-child relationship, based on such “evidence,” is not in the child’s best interests. The State has an obligation to plead and prove these allegations if it wants to rely on them as a basis for placing guardianship with someone other than respondent. Let there be no mistake — the burden must be on the State to present evidence in the first instance. Furthermore, if the State plans to use against a parent evidence of some conduct, the parent must be notified in some manner of the intended use. Without notice, a parent cannot prepare a meaningful response or defense. A dispositional hearing on a neglect petition is a vital stage in the process that can ultimately lead to termination of parental rights; therefore, it is important to the fairness of any future termination proceeding. In re Miracle C., 344 Ill. App. 3d 1046, 1056 (2003). A parent cannot be left to guess what avenues to pursue in order to protect this most fundamental right. For these reasons, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded. Affirmed in part and reversed in part; cause remanded. HUTCHINSON, J., concurs.