2021 IL App (2d) 200540-U
No. 2-20-0540
Order filed June 18, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF CARLENE M. SWIFT n/k/a Carlene M. DeNotto, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 15-D-728 |
| ANDREW D. SWIFT, | ) ) | Honorable Christine A. Downs, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court acted within the bounds of the mandate following a prior appeal in classifying certain real property as marital, as respondent failed to establish by clear and convincing evidence that the property was obtained through any of the enumerated statutory exceptions.

¶ 2    Following a remand of this court, the trial court classified certain real property out of which respondent, Andrew D. Swift, operates his nonmarital business as marital property and divided the assets accordingly. Andrew appeals, arguing (1) that the trial court exceeded the scope of the mandate and (2) that the evidence introduced at trial demonstrates that the property should be classified as his nonmarital property. We disagree and accordingly affirm the trial court.

¶ 3                                    I. BACKGROUND

¶ 4     Because the facts of this case were fully set out in our prior order (see *In re Marriage of DeNotto and Swift*, 2018 IL App (2d) 171044-U), we will restate only those facts necessary to fully understand and consider the current appeal. After nearly 16 years of marriage, petitioner, Carlene M. DeNotto (f/k/a Carlene Swift), filed a petition for dissolution of marriage. After a four-day trial, the trial court, with Judge Kevin T. Busch presiding, issued a dissolution judgment, finding Andrew dissipated nearly $40,000 of marital funds, classifying certain assets and debts as marital and nonmarital, and awarding maintenance and child support to Carlene. Carlene appealed, raising issues with dissipation and the classification of a warehouse as Andrew's nonmarital property, and Andrew cross-appealed, raising issues with the amount of dissipation and maintenance awarded to Carlene and the classification of certain limited liability companies as marital assets.

¶ 5     We affirmed several of the court's findings on dissipation and the classification of the two limited liability companies, Swift Properties, LLC, and Swift Equipment Leasing, LLC, as marital property. *Id.* ¶¶ 49, 63. We vacated the court's finding that the warehouse out of which Andrew operated his uncontested, nonmarital business (Cushioneer, Inc.) was nonmarital, because the trial court made an error in law in rendering its decision (*id.* ¶ 52) and the amount of dissipated marital funds after August 2014 (*id.* ¶ 49). We did not address the parties' contentions regarding the award of maintenance. Pertinent in the present appeal, we remanded the cause and instructed the trial court to "make specific findings from the evidence presented at trial of which funds were used to purchase the business [warehouse] property." *Id.* ¶ 56.

¶ 6     On remand, the trial court, this time with Judge Christine A. Downs presiding, held a bifurcated hearing: first determining the classification of the warehouse property and amount of

dissipation and then setting maintenance. At the first part of the hearing, the court read our instructions into the record before advising the parties that "each of you may argue what you believe is in the record to demonstrate which funds were used to purchase the business property." The court reminded the parties during argument that "the directive was clear. I'm trying to make sense of something I wasn't at. I have read the transcripts. I have taken notes from the transcripts. *** I'm really just asking you to tell me where it is and what it is."

¶ 7     A week after hearing argument, the trial court announced its decision. The court identified the exhibits and testimony it relied upon in making its decision. The exhibits included (1) a set of agreements from 1994 between Andrew and his father, Warren, which allowed Andrew to purchase Cushioneer; (2) a June 2009 warranty deed filed in De Kalb County "purporting to transfer the warehouse from Cushioneer to Swift Properties[;]" and (3) a July 2009 De Kalb County document showing a "transfer of the warehouse was recorded to Swift Properties, LLC, for $465,000[.]" The court acknowledged that "[t]he actual document showing the transfer was not in the record that the Court could find, but, it was relied upon by the appraiser in Exhibit 14."

¶ 8     As to the testimony it relied upon, the trial court noted "[t]here is no testimony or other evidence demonstrating how Cushioneer would ever have had the right to execute the deed to transfer the property to Swift Properties, it's not in the record." It also noted Andrew repeatedly testified that Cushioneer did not exercise the option in the 1994 agreements, but rather he negotiated with his father to reduce the price of the warehouse property (from $500,000 to $465,000) and for Swift Properties to purchase the warehouse property, to shield Andrew from double taxation. The court then noted the "numerous references" in the record of Swift Properties' accounts being used interchangeably with the parties' personal accounts, including Swift Properties paying for the parties' Wisconsin vacation property mortgage and Andrew's American

Express bill. Finally, the court noted that no lease was introduced into evidence and that Andrew testified that there was no written lease between Cushioneer and Swift Properties.

¶ 9 Recognizing that the property was acquired during the marriage, and thus is presumptively marital, the trial court explained,

"the marital LLC obtained the property from Warren Swift and likely not directly from Cushioneer. There is nothing to support that Warren Swift actually transferred the property to Cushioneer.

Andrew testified he convinced [Warren] to let Swift Properties, LLC, buy the building for 465,000. The exact amount, noted by the expert in the De Kalb recording that I referenced earlier.

Of course, we certainly know that anyone can prepare a deed, but without the testimony of that deed, the probative value of it, I find, to be lessened. There is no evidence Cushioneer had the right to transfer that deed, not even testimony explaining how that would have happened. The record doesn't demonstrate a transfer to Cushioneer, and in fact, all of the testimony that I have already gone over, and the reference in the stipulated appraisal show just the opposite, that the transfer went from Warren to Swift Properties, LLC."

The court concluded "there's no evidence in this case that non-marital money was used to procure this building."

¶ 10 The trial court then discussed its research into relevant case law and specifically discussed *In re Marriage of Heroy*, 385 Ill. App. 3d 640 (2008), and *In re Marriage of Perlmutter*, 225 Ill. App. 3d 362 (1992). Noting that any doubts as to the nature of the property are resolved in favor

of a marital finding, the court determined that Andrew had not overcome the presumption by clear and convincing evidence that the warehouse property was marital.

¶ 11    After the trial court determined the maintenance award, Andrew filed a motion to reconsider the classification of the warehouse as marital, or, in the alternative, to have an evidentiary hearing. The court denied his motion:

"The Appellate Court found the lease/buy arrangement did not provide the basis for the conclusion that the original trial court found that the warehouse was marital, therefore, this Court had to review the record to determine whether the source of the funds to purchase the warehouse demonstrate whether to classify it as nonmarital.

We begin with the presumption that it was marital based on the timing. The Court's review of the record has failed to reveal facts sufficient to overcome the presumption, and, therefore, the motion to reconsider as to classifying the building is denied.

The alternative request in the motion is for an evidentiary hearing. I do find having an evidentiary hearing would be well outside the Appellate Court's mandate. The Appellate Court said specifically that they had scoured the record – or that was my word 'scoured,' but that they had thoroughly reviewed the record and that they were remanding it to the trial court to also consider the record. At no time did the – is it remanded for a new hearing, at no time, and to have an evidentiary hearing I believe would have been outside the mandate."

This timely appeal followed.

¶ 12                              II. ANALYSIS

¶ 13    On appeal, Andrew contends that the trial court made two reversible errors. First, Andrew contends that the court acted in contradiction to our mandate from the previous appeal by making

factual findings and credibility determinations. Second, Andrew contends that the court erred in classifying the warehouse property as marital by mischaracterizing the evidence and misapplying the relevant law. We review Andrew's contentions in turn.

¶ 14     As to his first contention, Andrew argues because the previous appeal did not explicitly vacate any of Judge Busch's factual findings regarding the warehouse property, the current trial court, under Judge Downs, was required to issue an order consistent with those findings. Andrew maintains that Judge Downs exceeded her authority by making new factual findings and credibility determinations, relying on *Anderson v. Kohler*, 376 Ill. App. 3d 714, 721 (2007), for the proposition that the trial court committed due process violations in doing so. Carlene argues that Andrew misconstrues the mandate and that the court fulfilled its obligation under the mandate by reviewing the evidence presented at trial and reclassifying the warehouse property as marital.

¶ 15     A reviewing court's mandate vests a circuit court with jurisdiction only to take action that complies with the reviewing court's mandate. *In re Marriage of Jones*, 2019 IL App (5th) 180388, ¶ 23. A trial court must obey precise and unambiguous directions on remand and lacks the authority to exceed the scope of the mandate. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 44. The correctness of a trial court's action on remand is to be determined from the appellate court's mandate, not its opinion. *Id.* "However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant." *Id.*

¶ 16     The only proper issue on an appeal from the remand is whether the trial court's order on remand is in accord with the mandate. *Jones*, 2019 IL App (5th) 180388, ¶ 24. "After a remand, the trial court is required to exercise its discretion within the bounds of the remand. Whether it has done so is a question of law." *Clemons v. Mechanical Devices Co.,* 202 Ill. 2d 344, 351 (2002). Thus, whether the trial court complied with our mandate is subject to *de novo* review. *Id.* at 352.

¶ 17    In vacating the trial court's order regarding the warehouse property, we concluded, in pertinent part, "[f]or the reasons stated, we affirm each of the disputed findings except *** the classification of the business [warehouse] property ***. The orders relating to *** the classification of the business [warehouse] property are vacated." *In re Marriage of DeNotto and Swift*, 2018 IL App (2d) 171044-U, ¶ 67. The mandate issued remanded the cause "with directions for further proceedings consistent with [the] disposition."

¶ 18    With respect to the warehouse property, we stated,

> "to the extent that the court's statements that Andrew purchased and maintained the business [warehouse] property using non-marital assets constitutes a finding, we are in no position to determine whether this finding is against the manifest weight of the evidence. The parties have provided nothing to establish the source of the funds that were used to purchase the business [warehouse] property, and our thorough review of the record has likewise proved inconclusive. Under these circumstances, prudence dictates that the matter should be vacated and that the trial court be instructed to make specific findings from the evidence presented at trial of which funds were used to purchase the business [warehouse] property." *Id.* ¶ 56.

Thus, our precise and unambiguous directions required the trial court to make specific findings about the warehouse property from the evidence presented at trial.

¶ 19    Nevertheless, Andrew argues that the trial court erred when it identified the evidence and testimony presented at trial that it relied on in identifying the property as marital because we did not specifically state it should reclassify the warehouse property. When part of a judgment is vacated, the effect is to leave the case as if that part of the judgment had never been entered. *In re Marriage of Hale*, 278 Ill. App 3d 53, 56 (1996); see also *In re K.S.*, 365 Ill. App. 3d 566, 577

(2006) ("A vacated judgment is nullified, canceled, and void"). In this case, then, when we vacated the initial court's finding that the warehouse was Andrew's nonmarital property because of a mistake in law, and remanded it with instructions to make specific findings from the facts presented at trial, the court necessarily had to identify the evidence it would rely on and reclassify the warehouse based on that evidence. To hold otherwise would be absurd.

¶ 20    Andrew's reliance on *Anderson* is also inapposite. In *Anderson*, the plaintiffs sued the defendants, seeking specific performance of an oral contract to purchase land. 376 Ill. App 3d at 715. The initial trial court judge entered a finding in favor of defendants following plaintiffs' case-in-chief, and we reversed that judgment. *Id.* On remand, a successor judge barred plaintiffs from presenting their case-in-chief anew, basing his decision for defendants instead on a transcript of plaintiffs' case-in-chief from the initial bench trial, along with the evidence presented in the defendants' case-in-chief and the plaintiffs' rebuttal. *Id.* This court again reversed, holding that the plaintiffs' due process rights had been violated as the trial court was required to see the entire testimony of a witness whose credibility it assessed. *Id.* at 721. Because the successor judge made credibility determinations without observing all the witnesses' testimony, we remanded for a full trial *de novo*. *Id.* at 723-24.

¶ 21    Andrew argues here that Judge Downs made credibility determinations of the witnesses and factual findings without seeing the witnesses testifying, which violated his due process rights, like the plaintiffs in *Anderson*. That argument, however, is belied by the record. At the outset, the mandate required that the trial court make specific findings as to what funds were used to purchase the warehouse from the record at trial. Judge Downs necessarily had to discern what conclusion the evidence supported and did so by enumerating the relevant evidence from the trial and the testimony regarding the transfer of the warehouse property. Judge Downs then concluded that no

nonmarital funds were used. Unlike the remand trial judge in *Anderson*, Judge Downs did not rely on the transcript of one party's case-in-chief and rely on live testimony for the other party's case. Rather, she reviewed the trial as a whole.

¶ 22    Moreover, Judge Downs did not make her decision by assessing the witnesses' credibility. As Judge Downs stated, "I assure you there *** is not a single statement in that ruling regarding credibility. In fact, I believe what I said either on that date or the day we had the hearing was I was at a disadvantage because I could not and did not and would not be able to look at the credibility of the witnesses. And I did not." After a thorough review of the record, this court cannot find any inkling that Judge Downs assessed the credibility of the witnesses on remand. We note, though, that Judge Busch seemingly did, finding "the details" on the transfer of title for the warehouse property "unclear." Because she did not make a credibility determination, Judge Downs kept in line with our reasoning in *Anderson*: "The requirement that a judge see the entire testimony of the witness whose credibility he assesses is in keeping with the distinct roles of trial and appellate courts." 376 Ill. App. 3d at 721.

¶ 23    In sum, the trial court acted in accordance with our mandate to make specific findings, from the evidence presented at trial, of which funds were used to purchase the warehouse property. The trial court then reclassified the warehouse property as marital, as it found no nonmartial funds were used.

¶ 24    We turn now to Andrew's second contention, that the trial court erred in classifying the warehouse property as marital by mischaracterizing the evidence and misapplying the relevant law. Andrew initially argues that the evidence and testimony presented at the trial does not establish that Swift Properties purchased the warehouse from Warren, as the court found, but rather that Swift Properties received the deed from Cushioneer, thus tracing the warehouse's nonmarital

status. Andrew further argues that relevant case law supports a finding that the warehouse was his nonmarital property. Carlene, in response, maintains that the court did not err in classifying the warehouse as marital property, as Andrew did not establish by clear and convincing evidence any nonmarital exceptions applied, and any error the trial court committed in making that finding is harmless.

¶ 25    From the starting point of this issue, the parties are at odds. Andrew's arguments rely heavily on "the original trial court['s]" findings, whereas Carlene's rely on the successor court's findings. Because, as noted above, the original court's findings were nullified by our vacating the orders related to the warehouse property, the successor judge was required to analyze the facts presented at trial to classify and distribute the property accordingly. Thus, we analyze the court's findings on remand below.

¶ 26    Before distributing property as part of a dissolution of a marriage, a trial court must first determine whether the property is marital or nonmarital. *In re Marriage of Dann*, 2012 IL App (2d) 100343, ¶ 63. Pursuant to section 503 of the Marriage and Dissolution of Marriage Act (Act), " 'marital property' means all property, including debts and other obligations, acquired by either spouse subsequent to the marriage," with certain enumerated exceptions known as "non-marital property." 750 ILCS 5/503(a) (West 2016). Relevant to Andrew's argument, section 503(a)(6.5) provides an nonmarital exception for "all property acquired by a spouse by the sole use of non-marital property as collateral for a loan that then is used to acquire property during the marriage[.]" *Id.* § 503(a)(6.5). There is a rebuttable presumption that property acquired during a marriage is marital property, but a party may overcome that presumption by producing clear and convincing evidence that one of the enumerated exceptions in the Act applies. *In re Marriage of Asta and Pappas*, 2016 IL App (2d) 150160, ¶ 16. The burden of proof is on the party claiming that the

property is nonmarital. *In re Marriage of James and Wynkoop*, 2018 IL App (2d) 170627, ¶ 28. Any doubts as to the nature of the property are resolved in favor of a finding that the property is marital. *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 24.

¶ 27    Generally, a trial court's classification of an asset as marital or nonmarital property will be reviewed by the manifest weight of the evidence standard. *Asta and Pappas*, 2016 IL App (2d) 150160, ¶ 17. "The reason for this deferential standard of review is that the characterization of assets typically depends upon weighing witness credibility." *Id.* However, where, as here, the determination is one of law and does not involve determinations of credibility, our review is *de novo*. *Id.*

¶ 28    Andrew initially argues that Judge Downs's finding that the deed passed from Warren to Swift Properties contravenes the evidence at trial, identifying that the warranty deed that Carlene introduced at trial shows Cushioneer conveying the warehouse property to Swift Properties and that the court relied on hearsay evidence in the appraisal report. Andrew references two documents that he did not introduce at trial, and which are not included in the record before us, as irrefutable proof that Warren transferred the warehouse property to Cushioneer, and Cushioneer transferred the warehouse to Swift Properties, thus tracing the nonmarital status of the warehouse property. Ultimately, however, Andrew's argument fails because he did not establish—during the trial—the nonmarital status of the warehouse property.

¶ 29    Because the warehouse property was acquired after the marriage, the presumption exists that it was marital. The trial court expressly found that Andrew put forth "no evidence that non-marital money was used to procure this building." As our review is *de novo*, we have searched through the trial record properly before us and, like Judge Downs, have identified nothing in the record that clearly and convincingly rebutted the presumption that the warehouse property was

nonmarital. The facts presented at trial establish that Swift Properties, a marital asset, acquired the deed to the warehouse property during the marriage. Andrew testified that he negotiated with his father to allow Swift Properties to purchase the building and that there was no down payment made for the property. Cushioneer transferred rental payments to Swift Properties' account well in excess (over three times the amount) of the mortgage payments to Warren. These facts do not establish, as Andrew argues, that the warehouse was acquired by Andrew by using Cushioneer as collateral for a loan for the warehouse, as would be required by section 503(a)(6.5) of the Act. 750 ILCS 5/503(a)(6.5). No lease or other agreement was introduced at trial putting Cushioneer up as collateral for the warehouse. Similarly, no testimony was offered that would establish facts to adhere to that exception. The evidence introduced merely shows that the warehouse property was acquired during the marriage by a marital business entity.

¶ 30    The heart of the matter can best be summarized that Andrew was under the mistaken belief that Swift Properties was his nonmarital property. Indeed, the record demonstrates that he operated Cushioneer and the two LLCs as one nonmarital company, transferring money between the three entities' bank accounts and the marital bank account as he saw fit. Andrew believed that "the circumstances surrounding the transfer of title to the warehouse property from Cushioneer, Inc. to Swift Properties, LLC was of no legal significance because he considered it to be the transfer of title from one non-marital entity to another non-marital entity." That Andrew did not feel it necessary to put forth clear and convincing evidence that the warehouse property, which was acquired ten years into the marriage, was procured through an exception listed in section 503 of the Act does not change the fact he was required to do so in order for the trial court to classify the warehouse property as nonmarital.

¶ 31    To support his argument that the trial court incorrectly classified the warehouse as marital, Andrew also argues that the court misapplied relevant case law to the facts at hand. Andrew primarily relies on *In re Marriage of Heroy*, 385 Ill. App. 3d 640 (2008), stating that *Heroy* is on "all fours" with the facts at hand. In *Heroy*, the wife appealed the trial court's finding that certain property the husband acquired during the marriage was nonmarital. 385 Ill. App. 3d at 669. A year into the marriage, the husband and his brother purchased property from their parents in exchange for a promissory note. *Id.* at 670. The brothers made no down payment and paid the monthly installments to their parents from income generated from the property. *Id.* at 671. The brothers also obtained loans using the property as collateral and repaid the loans from proceeds from the property. *Id.* Reasoning that because the husband paid for the property with income generated by the property, the court held that the husband "acquired real estate without ever using marital income or assets to secure and repay the original and subsequent loans on the property." *Id.* at 672. Thus, the court concluded that the husband had proven that the property fell under the "exchange" exception in section 503(a)(2) of the Act. 750 ILCS 5/503(a)(2) (West 2006) ("property acquired in exchange for property before the marriage or in exchange for property acquired by gift, legacy, or descent" is a nonmarital exception). *Id.*

¶ 32    The facts of *Heroy* are distinguishable from the present case. The court in *Heroy* addressed whether the property fell within the "exchange" exception of the Act (750 ILCS 5/503(a)(2)). Here, Andrew does not argue that he exchanged any nonmarital property to acquire the warehouse, but that the warehouse became his nonmarital property when he executed the deed on behalf of Swift Properties and the payment of rent to a marital entity acted solely as a conduit for tax purposes. This court has previously declined to follow *Heroy*, noting the rationale was "somewhat obscure." *Dann*, 2012 IL App (2d) 100343, ¶ 102 (recognizing the *Heroy* court purportedly followed the

"exchange" provision of section 503(a)(2) of the Act, but that the funds exchanged for the assets were acquired during the marriage and it was unclear what exception the courts believed the funds themselves satisfied). We likewise elect not to do so here.

¶ 33    Andrew also cites *In re Marriage of Asta and Pappas*, *In re Marriage of Eddy*, and *In re Marriage of Steel*, 2011 IL App (2d) 080974, in support of his proposition that the trial court misapplied relevant case law, but merely sets out the facts of those cases without applying them to the facts at hand. However, each case is similarly distinguishable. In *Asta and Pappas*, this court held that the wife clearly established she had received certain stocks under circumstances that were consistent with a distribution from a trust, pursuant to section 503(a)(1) of the Act. 2016 IL App (2d) 150160, ¶ 36. In *Eddy*, the court found that three McDonald's restaurants purchased during the marriage were the husband's nonmarital property because the collateral for the loans and the funds used to purchase the restaurants came from properties the husband received through inheritance and gifts, pursuant to section 503(a)(2) of the Act. 210 Ill. App. 3d at 457-78. In *Steel*, the husband provided a detailed accounting of the funds transferred from his nonmarital account to a marital account, thus the funds never lost their nonmarital identity, because they were traceable. 2011 IL App (2d) 080974, ¶ 80. In each case, the parties, unlike Andrew, put forth evidence—at trial—of the property's nonmarital status.

¶ 34    Because Andrew did not establish clear and convincing evidence that the warehouse property was purchased using nonmarital funds, and any doubts as to the nature of property acquired by either party after the marriage are resolved in favor of a finding that the property is marital, we will not reverse the trial court's findings. Thus, we affirm the judgment of the trial court.

¶ 35                    III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 37    Affirmed.