NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260170-U

NO. 4-26-0170

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 25, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 25JA87 |
| v. | ) | |
| Trenton B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err by entering a dispositional order finding respondent fit but unable, for reasons other than financial circumstances alone, to care for the minor.

¶ 2   In June 2025, the State filed a petition for the adjudication of neglect of A.B. (born April 2018). Following the adjudicatory and dispositional hearings, the trial court granted the State's petition, finding the minor neglected and making her a ward of the court. In so ordering, the court found respondent, Trenton B., A.B.'s biological father, fit but unable, for reasons other than financial circumstances alone, to care for A.B. He appeals, claiming the court's finding was against the manifest weight of the evidence. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4   In June 2025, the State filed a petition pursuant to section 2-3(1)(b) of the Juvenile

Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2024)), contending the minor's environment, while in her mother's home, was injurious to her welfare based on an unsanitary home environment, the mother's substance abuse, and domestic violence between the mother and her paramour. (The mother is not a party to this appeal.)

¶ 5        Respondent's whereabouts were unknown until October 2025, when he appeared in court after service by publication. Respondent filed an answer, stating he neither admitted nor denied the allegations in the petition but stipulated the allegations could be proved by the preponderance of the evidence or by clear and convincing evidence. Respondent was not referred for any services after participating in an integrated assessment in November 2025. He had not been a part of A.B.'s life and, in fact, had never met his eight-year-old daughter.

¶ 6        At a combined adjudicatory and dispositional hearing on January 27, 2026, the trial court accepted the parents' stipulations, which indicated they were not contesting the allegations in the petition, and entered an adjudicatory order, finding the minor neglected. The court immediately proceeded to a dispositional hearing. After the presentation of testimony (unrelated to respondent), the court asked for argument. As for respondent, the State recommended some services be "put in place in regards to [respondent] reunifying with his daughter." The State proposed "standard conditions and cooperate with the agency." Respondent's counsel told the judge she "would adopt the recommendations of the State as they pertain to [respondent]." She said: "I think [indiscernible] been unable." The court indicated counsel's connection had "cut out." The court stated: "I heard you say you were adopting the recommendations of the State, but—but unable, then you cut out. So if you have anything else—." Without clarifying further, counsel stated respondent had no relationship with the minor at the time.

¶ 7        After considering the evidence and arguments of counsel, the trial court found

respondent "fit, but unable since [A.B.] doesn't know that he's her dad. And he will be ordered to do the standard conditions, but we're going to have to rip that Band-Aid off and we're going to have to get him some visitation." The court ordered that A.B. begin counseling to help her develop a relationship with respondent. The court further stated as follows:

"The standard conditions for [respondent], you know, who remains unable because there's no relationship, but if he wants to *** as long as he stays in the case and *** continues to want to exert his parental rights, then, you know, we'll need to give him, you know, visitation with the child to establish that bond."

¶ 8 Respondent's counsel asked the trial court to place A.B. with respondent as the most appropriate placement. The court denied the request, finding respondent was

"a stranger to the child, so that would be extremely traumatic to the child to just pull her from who she thinks her parents are *** and put her with a stranger, albeit probably a very suitable stranger in the sense that it—I agree with those *** those classifications of [respondent] as being, you know, fit, and suitable, and having a home that is *** fine. But I'm not going to do that to [A.B.] without going about it in an appropriate, therapeutic way."

¶ 9 Following the hearing, the trial court entered an adjudicatory order, finding A.B. neglected, and a dispositional order, finding respondent "fit but unable due to needing to establish a relationship with the minor [A.B.]" The court made A.B. a ward of the court, placing her in the care and custody of the Illinois Department of Children and Family Services.

¶ 10 This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, respondent argues the trial court's decision after the dispositional

hearing to not place A.B. with him was an abuse of discretion and against the manifest weight of the evidence when the court had found him fit but unable, for reasons other than financial circumstances alone, to care for the child. We disagree.

¶ 13      A proper disposition may include removal of the minor from the custody of her parents if the trial court determines that

> "the parents *** are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents." 705 ILCS 405/2-27(1) (West 2024).

¶ 14      A finding on any one of these three grounds—unfit, unable, or unwilling—provides a proper basis for removal. *In re Lakita B.*, 297 Ill. App. 3d 985, 992-93 (1998).

¶ 15      Once a minor is made a ward of the court, the trial court's dispositional order may include "any other orders necessary to fulfill the service plan, including, but not limited to *** orders requiring parties to cooperate with services." 705 ILCS 405/2-23(3) (West 2024). "The conditions of a dispositional order must have some basis in the evidence." *In re K.S.*, 365 Ill. App. 3d 566, 570 (2006).

¶ 16      A trial court's ruling at a dispositional hearing "will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008). "The trial court's finding is against the manifest weight of the evidence if a review of the record 'clearly demonstrates' that the opposite result was proper." *Lakita B.*, 297 Ill. App. 3d at 994. Moreover, in child custody cases, " 'wide discretion is vested in the trial judge to an even greater

- 4 -

degree than any ordinary appeal to which the familiar manifest weight principle is applied.' " *Id.* (quoting *In re D.L.*, 226 Ill. App. 3d 177, 185 (1992), citing *In re Martin*, 31 Ill. App. 3d 288, 293 (1975)).

¶ 17　　　　Respondent argues the evidence showed he was a fit parent, as he had a home, had other children, was in a stable marriage, maintained stable employment, and had the ability to meet the needs of A.B. He claims, given these attributes, the trial court erred in not placing A.B. with him, as that decision was against the manifest weight of the evidence. The court's justification for not placing A.B. with respondent was to avoid likely trauma to A.B. because she had no relationship with respondent. Respondent argues, though, that A.B. had already suffered trauma when living with her mother and her mother's paramour, yet the court directed A.B. to be placed with the paramour. The paramour was found fit and had raised A.B., as he was the only father figure she knew.

¶ 18　　　　The State initially argues respondent has forfeited this argument because his attorney adopted the State's argument at the dispositional hearing that respondent should be found fit but unable due to the lack of an established relationship between respondent and the minor. Although counsel did, in fact, adopt the State's argument, later in the hearing, counsel requested A.B. be placed with respondent. Therefore, we find respondent's argument here was not forfeited.

¶ 19　　　　Respondent cites *In re Daniel G.*, 2021 IL App (1st) 210640, as authority for the proposition that a noncustodial parent, who bore no responsibility for the conditions leading to the finding of neglect and was found fit, should be a viable placement for the minor. There, the First District held the State's evidence did not demonstrate the respondent father was unable to care for the minor. *Id.* ¶ 73.

¶ 20　　　　The facts in *Daniel G.* are drastically different from the case before us. There, at

the time of the initiation of the neglect proceedings based upon the mother's conduct, the minor was an infant and was residing with her. Paternity had not been established. *Id.* ¶ 7. Once the respondent learned he was the father, he expressed his desire to have the minor placed with him and to begin visitation. Before the dispositional hearing, the respondent father was visiting with the minor two to three times a week. *Id.* ¶ 32. At that point, the minor was a four-month-old infant.

¶ 21　　　　Here, the minor was eight years old, had never met respondent, and had no idea the mother's paramour was not her biological father. The fact that respondent is a stranger to A.B. is not dispositive, as most foster parents are strangers to minors placed in their homes. Rather, the dispositive fact here is this eight-year-old child had no idea she had any other father besides the mother's paramour. As the trial court found, the introduction and integration of respondent and A.B. into each other's lives should be handled with caution, patience, and under the supervision of mental-health professionals. Given this fragile situation, we cannot say the trial court's decision to not place A.B. with respondent upon its finding respondent was fit but unable was against the manifest weight of the evidence, despite respondent's superior right to custody of his child. That is, we cannot say the opposite result would have been proper.

¶ 22　　　　　　　　　　　III. CONCLUSION

¶ 23　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 24　　　　Affirmed.